L. A. RICKETTS, TRUSTEE, V. LINCOLN SAFE DEPOSIT COMPANY: FIRST TRUST COMPANY OF LINCOLN, APPELLEE, EDWARD C. WACKLER, TRUSTEE, ET AL., APPELLANTS.

297 N. W. 544

FILED APRIL 9, 1941. No. 30996.

*Harry R. Ankeny,* for appellants.

*Hall, Cline & Williams* and *Littrell & Patz, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ., and MEYER, District Judge.

CARTER, J.

This is an appeal from an order of the district court for Lancaster county, authorizing the First Trust Company as successor-trustee to execute and deliver to the Liberty Theatre Building Corporation, for a consideration of $5,000, a release of mortgage on a leasehold interest in the real estate described in the mortgage.

The record shows that on June 25, 1917, Frank D. Eager became the owner of a 99-year lease on the Liberty Theatre Building in Lincoln. On June 15, 1928, Frank D. Eager and wife mortgaged their leasehold interest in the property to the Lincoln Safe Deposit Company for $80,000, represented by 123 bonds which were sold to investors. On June 15, 1933, the mortgage became in default with $69,000 in bonds outstanding and unpaid. In order to prevent a foreclosure of the mortgage and to facilitate the leasing of a portion of the premises for a period of 20 years at an ad-

vantageous rental, a large majority of the bondholders organized the Liberty Theatre Building Corporation with the understanding that bondholders would exchange their bonds for a corresponding amount of stock in the corporation. Holders of bonds totaling $63,000 exchanged their bonds for stock. The appellants, Edward C. Wackler, Earl B. Anderson and Margaret Anderson, holders of the remaining bonds totaling $6,000, refused to make the exchange. It appears that the prospective lessee of the theatre in the building was insisting that the defaulted mortgage on the 99-year leasehold interest be released before an agreement for the leasing of the theatre be made. In other words, the prospective lessee was willing to make the lease, knowing that the terms of the 99-year lease must be met, but was unwilling to do so with the defaulted mortgage unreleased and a continuous threat to his peaceful possession of the premises.

The lessee of the 99-year lease, as a part of the transaction, assigned his interest in the lease to the Liberty Theatre Building Corporation and continued to act as manager of the building without further compensation. With this situation existing, the First Trust Company, as successor-trustee for bondholders under the provisions of the mortgage, petitioned the district court for an order authorizing such successor-trustee to release the mortgage on the 99-year leasehold interest for a consideration of $5,000. The appellants filed objections to the making of such an order and, after the prayer of the trustee was granted by the district court, appealed to this court.

There is no satisfactory evidence in the record that the mortgage lien on the 99-year leasehold estate had a value in excess of the $5,000 offered. The record shows that the building was barely paying its own way. A forced sale of the 99-year lease, already impaired by defaults, would bring but little on the open market. That the leasing of the theatre for 20 years would be beneficial to the holders of the bonds is not successfully disputed, whether the mortgage be foreclosed or the building operated by the new

corporation. The question to be determined, therefore, is the power of the district court to make the order as distinguished from the wisdom of its issuance.

It is the contention of appellants that the rights of the parties are determined solely from the terms of the mortgage agreement and that the order granted by the district court constitutes an impairment of contract. It is doctrine generally announced that a bondholder cannot be compelled to accept something different than that for which he contracted. *Rudell v. Union Guardian Trust Co.*, 295 Mich. 157, 294 N. W. 132. But this is not always so. An authoritative text-writer states an exception in the following words: "When a large majority of the parties interested in an insolvent corporation have made mutual concessions and sacrifices in order to salvage the wreck, and have agreed upon a mode of reorganization directed toward that purpose wherein fair and reasonable provisions have been made for all interests, it is seldom that a way is not found for blocking the maneuvers of a bondholder or unsecured creditor who, by refusing to join the agreement, or by attempting to assert his abstract contractual rights, would create an obstruction value to his bonds or claims for the purpose of being bought off to his advantage over others with like rights." 3 Jones, Bonds & Bond Securities (4th ed.) sec. 1507. We think the foregoing principle is analogous to the situation here presented. In the instant case, more than 90 per cent. of the bondholders desire the benefits of the proposed plan. Many of them have advanced funds for the payment of taxes and other obligations to clear the way for its performance. The mortgagor has voluntarily surrendered the mortgaged property and has thereby saved the time and expense of a foreclosure suit. The personal liability of the mortgagor has been preserved for the benefit of all bondholders. The rights of the appellants against the successor-trustee are the same as they would have against a trustee in possession of the mortgaged property after a foreclosure. Appellants contend, however, that they are entitled to have the mortgage foreclosed and

the security sold at judicial sale. We think this contention was properly answered in *Gates v. Boston & N. Y. Air Line R. Co.*, 53 Conn. 333, 5 Atl. 695, wherein that court said: "The plaintiff's contention in this behalf rests upon his assumption that he has a constitutional property right to have the property appropriated in the manner claimed by him. In making this claim the plaintiff ignores, or subordinates to his own claim, both the private rights of his cobondholders and public rights vested in trust in the state. * * * So too in relation to the other bondholders, it is manifest that each bondholder enters into contract relation with each and all of his cobondholders. His right to appropriate the security in satisfaction of his bond in such lawful manner as he may choose, is modified by the same existent right in every other holder. His absolute right of control is limited not only by the express provisions of the bond and mortgage, but also in great measure by the peculiar nature and character of the security."

In a very similar case the supreme court of Illinois said: "Where, as here, the sale of the property on foreclosure is a step in a reorganization project, which project the bondholders have an absolute right to engage in if it be a fair plan, it is difficult to see how a court of equity could fairly and adequately consider the approval of the foreclosure sale without also considering the reorganization plan. Certainly, if such a plan is proposed, it would appear that in a court of equity only may the greatest protection to all concerned be assured. Whether the sale price is adequate or inadequate may depend upon the plan of reorganization open to all bondholders. * * * Certainly, there can be no violation of contract rights arising out of an assumption of jurisdiction of the reorganization plan by a court of equity. No one is required to join the depositing committee. The sale has been decreed, and all who do not desire to join the plan may take their share of the proceeds in cash. * * * The purpose of this purchase, as stated in the plan, is to place a merchantable title into the liquidating trust, so as to render possible the execution of the plan of liqui-

dation. * * * The court is concerned with the fairness of the bid as to those bondholders who have not adopted the plan. In this it must be borne in mind, however, that nondepositing bondholders are not to be aided in an effort to create a maneuvering value for their bonds or give them a nuisance value by attempting to obstruct reorganization. * * * The chancellor had, however, wide discretion in the matter of approval or disapproval of this sale. * * * The record contains no evidence that a resale would bring a sufficiently larger amount to net a substantially larger sum to the nondepositing bondholders, after paying the expenses of both sales." *First Nat. Bank v. Bryn Mawr Bldg. Corporation,* 365 Ill. 409, 6 N. E. (2d) 654.

Summarizing the situation, we find that holders of more than 90 per cent. of all the outstanding bonds have accepted the reorganization plan. Many of these have advanced funds to protect the interests of all the bondholders. Mutual concessions and sacrifices have been made to facilitate the completion of the plan. The mortgagor has voluntarily surrendered the mortgage security without impairing his personal liability. The sale price of the mortgaged property is not shown to exceed the $5,000 bid, nor is it shown that a resale, judicial or otherwise, would bring a greater sum. All who do not care to join in the plan are free to take their share of the proceeds of the sale in cash. And above all, the plan of reorganization is fair and equitable to all the bondholders. Under these circumstances a court of equity having jurisdiction of the trust may properly order the sale of the mortgaged property and authorize the trustee to release the lien of the mortgage upon payment of the price bid.

It is true that precedent does not exist in this state for the entry of such an order. In the federal courts it has been comparatively common for them to take notice of reorganization plans in foreclosure suits and to withhold final judgment until some fair and open plan of reorganization was submitted and substantially agreed upon. Many state courts have followed the same principles. The juris-

diction of such courts arose from the necessity of adapting new remedies to new conditions. Equitable modes of relief are not and must not become fixed and rigid. Equity courts must be free to mold remedies to fit the conditions with which they have to deal. We conclude that the action of the trial court was in all respects correct.

AFFIRMED.