IN RE APPLICATION OF SANITARY AND IMPROVEMENT DISTRICT No. 65.
SANITARY AND IMPROVEMENT DISTRICT No. 65 OF SARPY COUNTY, NEBRASKA, APPELLEE, V. MARY ANNE WEFSO ET AL., APPELLANTS.
365 N.W.2d 456

Filed April 5, 1985.   No. 84-079.

Gary J. Nedved of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., and E.W. Hollstein of Hollstein and Wefso, for appellants.

Robert C. Doyle of Walsh, Walentine, Miles, Fullenkamp & O'Toole, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Sanitary and Improvement District No. 65 of Sarpy County, Nebraska, applied, pursuant to the provisions of Neb. Rev. Stat. §§ 31-755 et seq. (Reissue 1984), for an extension of time within which to retire certain warrants it had issued and which, but for favorable action on the application, would become due and payable on April 22, 1983. The district court granted an extension to January 1, 1986, and certain of the warrant holders appeal. They assign as error that court's failure (1) to increase the district's tax levy and (2) to require that the district use particular funds to retire, in the order of registration, the outstanding warrants at issue. We reverse and remand with directions.

The warrants involved were issued for capital outlays prior to July 10, 1976. They bore no maturity dates. Section 31-755 provides in relevant part:

> Warrants issued prior to July 10, 1976, for capital outlays of the district shall become due and payable twelve

months after April 21, 1982 . . .; *Provided*, that such warrants need not be retired on such date . . . and shall not be in default if the district court of the county shall determine, upon application to it by the district, that the district does not have the funds to retire such warrants and either (1) the district is unable to sell its bonds in amount sufficient to retire such warrants, or (2) an unreasonably high tax levy, as compared to the levy on other similar property in the county, would be required in order to cover the debt service requirements on bonds issued to retire such warrants. . . . Upon making such determination the district court may make such orders concerning retirement of the warrants as it shall determine proper under the circumstances of the district including ordering an increase in the tax levy of the district to provide funds for warrant redemption, except that no court-ordered tax levy for redemption of warrants shall cause the total tax levy of the district to be unreasonably high as compared with the tax levy of other similar property in the county. Such warrants shall draw interest at such rate as fixed by the board of trustees or the administrator and endorsed on the warrants, from the date of presentation for payment and shall be redeemed and paid from the proceeds of special assessments or from the sale of the bonds issued and sold as provided in this section or from any other funds available for that purpose. Bonds to redeem such warrants shall be issued as soon as economically feasible and to the extent warrants are not redeemed from bond proceeds or other funds available for such purpose, the district shall make a tax levy to provide a sinking fund for warrant redemption, except that such obligation shall not require a total tax levy by the district which shall be unreasonably high as compared with the tax levy on other similar property in the county.

This appears to be our first opportunity to review an application filed pursuant to the foregoing statute seeking to extend the time within which to retire warrants; accordingly, it is appropriate that before proceeding further we settle upon the scope of this court's review. In *S.I.D. No. 32 v. Continental*

*Western Corp.*, 215 Neb. 843, 343 N.W.2d 314 (1983), we held that an action to determine the nature and validity of warrants issued by a sanitary and improvement district was one at law. *City of Omaha v. S.I.D. No. 287*, 214 Neb. 371, 334 N.W.2d 429 (1983), *modified* 214 Neb. 873, 334 N.W.2d 429, held that Neb. Rev. Stat. § 31-749 (Reissue 1978), granting the district court power to review assessments made by the board of a sanitary and improvement district "in a summary manner as in equity," empowered both the district court and this court to review the matter de novo as in other equity actions. In *Metropolitan Life Ins. Co. v. SID No. 222*, 204 Neb. 350, 281 N.W.2d 922 (1979), a case questioning the validity of certain special assessments made under the provisions of then § 31-755 (Reissue 1978), this court conducted an equity review.

The instant case does not involve the validity of the warrants as did *S.I.D. No. 32*, nor does it arise under statutory language directing an equity review as did *City of Omaha*. Although the issue here is different, and no prior decision of the board of the district is involved, the present case nonetheless arises out of the same statute as did *Metropolitan Life Ins. Co.* It arises under a statutory proceeding which empowers the district court, after making certain statutory findings, to either delay retirement of the warrants or to order steps resulting in their retirement. These species of relief operate to render the administration of justice more complete than would be the case without them, and consequently sound in equity rather than in law. See *Ricketts v. Lincoln Safe Deposit Co.*, 139 Neb. 318, 297 N.W. 544 (1941) (observing that equitable modes of relief are not fixed and rigid).

We therefore conclude that our review is equitable in nature and to be conducted de novo on the record in order that we may reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached in the district court, subject to certain other rules not relevant to this case. *Burgess v. Omahawks Radio Control Org., ante* p. 100, 362 N.W.2d 27 (1985); Neb. Rev. Stat. § 25-1925 (Reissue 1979).

The uncontroverted evidence, adduced from a specialist in sanitary and improvement district financing employed by the

fiscal agent for the district, established that the district covers the Meadows Subdivision, a residential area in Sarpy County, which was approximately 80 percent completed at the time of the subject hearing in 1983. The district's tax base at that time was $14 million, having increased from a 1982 tax base of $11,800,000. There was substantial ongoing construction, and it was the witness' opinion that all construction would begin by the summer of 1985 and that a full tax base of $20 million would be reached by 1986.

The district's levy at the time of the hearing of $1.06 per $100 of taxable value made it the 21st highest levy of the 83 sanitary and improvement districts in the county. The tax levy in the other Sarpy County districts ranges from a high of $2.07 to a low of $0.02. The average levy for the 20 districts with higher levies is $1.36 per $100 of taxable value, or $0.30 higher than the district's levy. The witness testified that a mill levy substantially higher than those of other districts produces an adverse effect on construction in the district with the higher levy.

The district currently has bonds outstanding in the principal amount of $3,350,000. The debt service on these bonds is approximately $144,000 "for the next sixteen years." The total principal value of all warrants outstanding is $3,800,000, and in the area of $5 million when accrued interest is added. Only so-called Type 1 warrants, having a principal value of $1,359,000, are the subject of this application for extension. Neither the rate of annual interest borne by the warrants nor the amount of accrued interest is disclosed by the record. However, according to the witness, the interest "is not paid" until the warrant is "called for payment." The record does not tell us whether the interest "is not paid" because the district has elected not to do so or because the warrants so provide.

The assets of the district consist of its tax base of $14 million, a bond sinking fund totaling approximately $675,000, and receivables from special assessments totaling approximately $800,000.

Based on the district's financial condition, it was the witness' recommendation that the district not issue bonds in order to retire the Type 1 warrants. First of all, the witness thought it would be difficult, if not impossible, to sell such bonds in light

of the district's financial condition. If such bonds could be sold, the interest rate would have to be at least 13 percent, 3 percent above what a sanitary and improvement district with adequate financial resources would have to pay.

Secondly, the witness estimated that bonds totaling $2,600,000, which figure includes selling costs, would have to be issued in order to retire the warrants involved. Based on a 13-percent interest rate, this would require an additional tax levy of approximately $2.64. Added to the tax levy of $1.06 already in existence, the district's levy would be $3.70, far higher than the next highest levy of $2.07 in a comparable sanitary and improvement district.

The warrant holders argue that since there are enough funds to pay off some of the earlier Type 1 warrants, the district should be ordered to retire those particular warrants. We agree.

Neb. Rev. Stat. § 77-2201 (Reissue 1981) provides: "All warrants upon the State Treasurer, the treasurer of any county, city, school district or other municipal corporation shall be paid in the order of their presentation therefor."

Neb. Rev. Stat. § 31-705 (Reissue 1984) has always stated that a sanitary and improvement district "shall be a body corporate and politic." It is clear that although a municipal corporation is a body corporate and politic, not all bodies corporate and politic are municipal corporations. In its strict and proper sense, a municipal corporation is a body corporate and politic constituted by the incorporation of the inhabitants of a city or town for the purposes of local government. *McDowell v. Rural Water Dist. No. 2*, 204 Neb. 401, 282 N.W.2d 594 (1979); *Evans v. Metropolitan Utilities Dist.*, 187 Neb. 261, 188 N.W.2d 851 (1971). Nonetheless, bodies other than those within the strict and proper sense of the term have been referred to as municipal corporations for certain purposes. *Buras v. School Dist. No. 37*, 190 Neb. 836, 212 N.W.2d 632 (1973), refers to a school district as such; and *Davis Management, Inc. v. Sanitary & Improvement Dist. No. 276*, 204 Neb. 316, 282 N.W.2d 576 (1979), and *Hayes v. Sanitary & Improvement Dist. No. 194*, 196 Neb. 653, 244 N.W.2d 505 (1976), refer to sanitary and improvement districts as municipal corporations. We consider sanitary and improvement districts

as municipal corporations for the purposes of § 77-2201.

Neb. Rev. Stat. § 77-2206 (Reissue 1981) states 'in pertinent part: "It shall be the duty of every treasurer to pay each registered warrant, in the order of its registration."

So far as the record reflects, the district is free to use the $800,000 in receivables from special assessments to retire as many of the Type 1 warrants which became due and payable on April 22, 1983, as such sum permits. We direct that such be done.

We agree with the district, however, that it is not presently economically feasible to issue bonds to retire all of the warrants in question. We also conclude, however, that raising the tax levy by $0.30 per $100 of taxable valuation to establish a sinking fund to retire the remaining Type 1 warrants will not result in a tax levy "unreasonably high as compared with the tax levy on other similar property in the county." The district's levy will then be equal to the average of the levies of the 20 districts with levies higher than that of the district. We therefore direct that the district so raise its levy, establish such a sinking fund, and retire the remaining Type 1 warrants on a yearly basis commencing on April 22, 1986, in accordance with § 77-2206, until all of the subject warrants shall have been retired.

Accordingly, we reverse the decree of the district court, remand the cause, and direct that a decree in accordance with this opinion be entered.

REVERSED AND REMANDED WITH DIRECTIONS.