**In the Matter of SANITARY AND IMPROVEMENT DISTRICT 65 OF SARPY COUNTY, NEBRASKA, Debtor/Plaintiff,**

v.

**FIRST NATIONAL BANK OF AURORA and Edmund W. Hollstein, Defendants.**

Bankruptcy Nos. BK85–756, A85–352.

United States Bankruptcy Court, D. Nebraska.

Dec. 2, 1986.

Robert Doyle, Walsh, Fullenkamp, Doyle & Rau, Omaha, Neb., for Sanitary and Imp. Dist. 65 of Sarpy County, Neb.

William R. Hadley and Terry R. Anderson, Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., Omaha, Neb., for Official Bondholders' Committee.

Scott Davis and Gary J. Nedved, Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., Lincoln, Neb., for Official Warrantholders' Committee.

Kenneth C. Stephan, Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb., for amicus curiae Dain Bosworth Inc.

Ronald W. Hunter, Omaha, Neb., for FirsTier Bank.

Richard J. Pedersen and Anthony J. Fejfar, Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., for amicus curiae Nebraska Securities Industry Assn.

MEMORANDUM OPINION

TIMOTHY J. MAHONEY, Bankruptcy Judge.

Trial on this adversary proceeding was held July 15, 1986. Appearing at trial on

behalf of the Sanitary and Improvement District 65 of Sarpy County, Nebraska, (SID 65) was Robert Doyle of Walsh, Fullenkamp, Doyle & Rau, Omaha, Nebraska. Appearing on behalf of the Official Bondholders' Committee was William R. Hadley of Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., Omaha, Nebraska. Appearing on behalf of the Official Warrantholders' Committee was Scott Davis of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., Lincoln, Nebraska. Several pretrial and post trial briefs were filed by the parties and by others in the capacity of amicus curiae. Briefs were filed on behalf of the Official Bondholders' Committee by William R. Hadley and Terry R. Anderson of Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., of Omaha, Nebraska. Briefs were filed on behalf of the Official Warrantholders' Committee by Gary J. Nedved of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., of Lincoln, Nebraska. Briefs were filed on behalf of amicus curiae Dain Bosworth Incorporated by Kenneth C. Stephan of Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Nebraska. A brief was filed on behalf of FirsTier Bank by Ronald W. Hunter, Omaha, Nebraska. A brief was filed on behalf of amicus curiae The Nebraska Securities Industry Association by Richard J. Pedersen and Anthony J. Fejfar of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Nebraska.

The Court having considered the evidence presented at trial and having read each of the pretrial and post-trial briefs and considered the arguments of counsel does hereby enter its findings of fact and conclusions of law as required by Bankruptcy Rule 7052 and FRCP 52.

### Statement of the Case and Issue

The debtor filed a Chapter 9 bankruptcy petition on April 5, 1985. On or about December 10, 1985, the debtor filed a complaint initiating an adversary proceeding naming as parties defendant the First National Bank of Aurora as representative of the bondholders of the debtor (bondholders) and Edmund W. Hollstein as representative of the warrantholders (warrantholders), requesting that the Court declare the relative priority of the bondholders and the warrantholders under Nebraska law.

The issue is: under Chapter 9 of the Bankruptcy Code, or under the Nebraska Statutes, are the claims of bondholders of a Sanitary and Improvement District (SID) superior to the claims of warrantholders of an SID thereby requiring or permitting the debtor to treat the claims of bondholders with a priority over claims of warrantholders in a plan of adjustment?

### Decision

Nebraska Revised Statues § 31–755 (Reissue 1984) provides a statutory payment priority in favor of the obligations to bondholders. Therefore, the SID may classify the claims of bondholders different from and superior to the claims of warrantholders.

### Facts

1. A sanitary and improvement district is a special purpose political subdivision created under Nebraska Revised Statutes § 31–727 et seq. (1984) to provide for the construction of basic improvements such as streets, sewer lines, water lines and parks in connection with the development of real estate, particularly residential real estate. Sanitary and improvement districts have the power to levy both general and special taxes and to condemn real estate. Under Federal law such districts are political subdivisions and their debt obligations bear interest which is exempt from taxes under § 103(a) of the Internal Revenue Code of 1954, as amended.

2. Sanitary and improvement districts are organized by initial proceedings in the Nebraska District Court and their bonds may not be issued without court approval. Under Nebraska Revised Statute § 31–755 (1984), the power to issue bonds exists only after the improvements being financed have been completed and accepted. Pending the issuance of bonds, a sanitary and improvement district is authorized to issue warrants for capital outlay purposes to the contractor performing the work and to oth-

er claimants, without court approval. Such warrants bear interest from the date of registration with the district's treasurer and are normally redeemed from the proceeds of bonds sold after completion of the improvements. Warrants issued to the contractors and other claimants are normally purchased by an investment banker for cash and in turn sold to investors.

3. From May of 1973 through November 9 of 1984 the debtor issued warrants to pay for the costs of constructing improvements within the SID.

4. In March of 1977 the debtor issued 1.5 million dollars of bonds and the net proceeds from the bond issue were applied to partially satisfy warrants outstanding on such date.

On the date the bankruptcy petition was filed, the principal amount of $1,275,000 was still outstanding on the bond issue and warrants were outstanding in the principal amount of $4,285,287.16.

5. There are insufficient funds on hand to retire the balance of the outstanding bonds, principal and interest, or to retire the balance of outstanding warrants plus accrued interest. In addition, there is an insufficient tax base now and from expert testimony this Court concludes that there will be an insufficient tax base in the reasonably foreseeable future to permit sufficient revenues to be generated annually to retire the principal balance of the bonds and warrants or even to service the annual interest obligation on bonds and warrants.

6. There are insufficient other sources of revenue such as fees from the water or sewer system or interest on warrants or bonds held by the district which are obligations of another SID to insure the payment of principal and interest on the bonds and warrants.

7. The SID has proposed a plan of arrangement under Chapter 9 of the Bankruptcy Code which provides for different payments to the bondholders and warrantholders depending upon the priority determination.

8. The bondholders presented evidence from specialists in sanitary and improvement district financing. The testimony was that specialists in the field of sanitary and improvement district financing considered bonds to be a more secure investment because of the statutory requirement concerning the taxing obligation of the SID; the repayment procedure; bonds could not be issued without court approval; bonds could not be issued without the completion of improvements which would assure or at least permit the experts to estimate a future tax base which would be sufficient to support a tax levy enabling the SID to meet its principal and interest obligations on an annual basis. Warrants, according to the testimony, are not considered as good an investment either by the investment bankers who sell the warrants to the general public or to the purchasers of such warrants. The reason the warrants are not considered as good an investment as the bonds once again relates to the taxing ability of the SID. Warrants may be issued to pay contractors for capital improvements as those capital improvements are being installed and prior to their being completed and prior to there being any private improvements whose value could be used to calculate a tax base in excess of the value of the bare land.

The testimony also indicated that one could evaluate the relative risk of a bond versus a warrant as perceived in the industry, both by the seller and the buyer, by reviewing the interest rate. Since warrants are considered to be short-term instruments payable by the future issuance of bonds when the tax base is sufficient and by other sources if the SID has other sources, historically the interest rates on warrants have been significantly higher than the interest rates on bonds.

There were several objections to the testimony of the experts and to the introduction of various parts of the deposition of one expert. However, the witness was permitted to testify as to his opinion and Exhibit No. 6, his deposition, was admitted subject to the Court reviewing the evidence and making a determination after such review of whether or not the objection should be sustained.

The Court finds that the objections to the witness's opinion concerning the perception of risk of warrants versus bonds, as perceived by the sellers and purchasers of the instruments, are not well founded and are overruled.

The Court further finds as a fact that sellers and purchasers of warrants and bonds did perceive a difference in the risk of such instruments. Such opinion of risk is represented by the higher interest rates the purchasers demand of warrants in contrast to rates required of bonds. The Court does not find, however, that the different risk is perceived to be risk of repayment. No evidence was presented that any warrantholder considered the possibility of nonpayment when the warrants were purchased. Instead, the evidence is that the "risk" factor considered by the purchaser of warrants concerns the timing of payment.

9. Holders of Type I warrants, those issued before 1976 were apparently told that they would receive interest payments when the warrants were retired; that retirement would come when the development was improved enough so that the tax base was sufficiently high to enable the SID to sell bonds and be able to retire such bonds from annual tax payments.

10. Holders of other types of warrants, issued after changes in the law, were told interest would be paid annually, with principal payment to be made when the SID was able to sell bonds.

11. The final group, holders of a third type of warrant, were beneficiaries of a statute that required annual interest payments and a specific retirement date.

12. Bondholders, in contrast, purchased instruments with a specific payoff schedule for interest and principal.

*Conclusions of Law and Discussion*

Sanitary and Improvement District 65 of Sarpy County, Nebraska, is a municipal corporation created pursuant to the provisions of Nebraska Revised Statute § 31–727 through § 31–780. It has outstanding warrants which were issued pursuant to the authority granted the SID by such statute and outstanding bonds which were also issued pursuant to the authority granted by such statute. The bondholders and the warrantholders agree that the SID is unable at this time and will be unable for the foreseeable future to raise sufficient taxes or obtain other sources of revenue to satisfy all of the principal and interest obligations resulting from the issuance of the warrants and the bonds. Therefore, the issue for the Court is whether the bonds get paid first or have some priority of payment or whether the warrants and bonds are of equal priority under the state statutes or the Bankruptcy Code.

Under the Bankruptcy Code the issue really is whether the claims of the bondholders may be classified differently from the claims of the warrantholders. The authority for classifying claims is found in Bankruptcy Code § 1122 as applied by Bankruptcy Code § 901 to a Chapter 9 filing.

Bankruptcy Code § 1122 states:

*Section 1122. Classification of Claims or Interest.*

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

For purposes of this case, subsection (b) of § 1122 is not applicable. The district is not attempting to classify warrantholder claims different from bondholder claims on the basis of amount.

Nebraska Revised Statutes § 31–727 (Reissue 1984) defines warrants and general obligation bonds. A warrant is defined at § 31–727(5)(d) as:

"An investment security under Article 8 of the Uniform Commercial Code in the form of a short-term interest bearing order payable on a specified date issued

by the Board of Trustees or administrator of a sanitary and improvement district to be paid from funds expected to be received in the future, including, but not limited to, property tax collections, special assessment collections, and proceeds of sale of general obligation bonds."

A general obligation bond is defined at § 31–727(5)(e) as:

"An investment security under Article 8 of the Uniform Commercial Code in the form of a long-term written promise to pay a specified sum of money, referred to as the face value or principal amount, at a specified maturity date or dates in the future, plus periodic interest at a specified rate."

For purposes of the bankruptcy analysis, both a warrant and a general obligation bond are unsecured obligations of the SID. The statute grants no lien on any property or asset of the SID to secure the interest of the warrantholder or the bondholder.

An analysis of the statutory scheme leads this Court to the conclusion that the legislature did not anticipate nor provide for treatment of warrantholders or bondholders in the case of an SID bankruptcy. However, the legislature did authorize bondholders and warrantholders to be treated differently with regard to payment if and when warrants became due pursuant to the statute and there were insufficient funds available for such payment.

Section 31–755, as amended in 1982, provides that warrants issued prior to July 10, 1976, for capital outlays of the district shall become due and payable twelve months after April 21, 1982, and warrants issued on or after July 10, 1976, for capital outlays of the district shall become due and payable not later than five years from the date of issuance;

"*provided,* that such warrants need not be retired on such date or within such five-year period and shall not be in default if the District Court of the County shall determine, upon application to it by the district, that the district does not have the funds to retire such warrants and either (1) the district is unable to sell its bonds in amount sufficient to retire such warrants, or (2) an unreasonably high tax levy, as compared to the levy on other similar property in the county, would be required in order to cover the debt service requirements on bonds issued to retire such warrants. ... upon making such determination the District Court may make such orders concerning retirement of the warrants as it shall determine proper under the circumstances of the district including ordering an increase in the tax levy of the district to provide funds for warrant redemption, except that no court-ordered tax levy for redemption of warrants shall cause the total tax levy of the district to be unreasonably high as compared with the tax levy of other similar property in the county. Such warrants ... shall be redeemed and paid from the proceeds of special assessments or from the sale of the bonds issued and sold as provided in this section or from any other funds available for that purpose. Bonds to redeem such warrants shall be issued as soon as economically feasible and to the extent warrants are not redeemed from bond proceeds or other funds available for such purpose, the district shall make a tax levy to provide a sinking fund for warrant redemption, except that such obligation shall not require a total tax levy by the district which shall be unreasonably high as compared with the tax levy on other similar property in the county. ... the Board of Trustees ... shall levy special assessments on all lots, parcels, or pieces of real estate benefited by the improvement to the extent of the benefits to such property, which, when collected, shall be set aside and constitute a sinking fund for the payment of the interest and principal of such bonds. In addition to the special assessments provided for in this section, there shall be levied annually a tax upon the actual value of all the taxable property in such district except intangible property which, together with such sinking fund derived from special assessments, shall be sufficient to meet payments of interest and principal on all bonds as such become due. Such tax shall be known as the

sanitary and improvement district tax and shall be payable annually in money."

In summary, with regard to payment of bonds, the SID is required by § 31–755 to levy a tax upon the property in the district in addition to levying special assessments on the benefited property which will permit the SID to make the interest and principal payments on all bonds of the SID. In contrast, the SID is not required and cannot be required by a State District Court judge to make a tax levy sufficient to pay off warrants when they come due if such tax levy will be unreasonably high as compared with the tax levy on other similar property in the county.

There is a significant difference in the payment rights of a warrantholder and a bondholder as a matter of law.

Recently the Nebraska Supreme Court reviewed and implemented the terms of § 31–755 with regard to warrants issued prior to July 10, 1976. These warrants were identified as Type I warrants both in the Nebraska Supreme Court opinion and in the evidence and the arguments presented to this Court. See *In Re Application of Sanitary and Improvement District No. 65*, 219 Neb. 647, 365 N.W.2d 456 (1985). In that case this SID requested from the District Court an extension of time within which to retire the Type I warrants. The District Court granted such extension and the warrantholders appealed to the Nebraska Supreme Court. The Court found that the SID had assets including receivables from special assessments totaling approximately $800,000. Since the SID was not prohibited from using the $800,000 in receivables from special assessments to retire Type I warrants, the Court directed that such receivables be used to retire such warrants. However, with regard to making a tax levy high enough to pay off the warrants, the Court acknowledged the language of § 31–755 and found that it was not economically feasible for the SID to issue bonds to retire all of the warrants in question. The Court concluded that raising the tax levy by $0.30 per $100 of taxable valuation to establish a sinking fund to retire the remaining Type I warrants would

not result in a tax levy "unreasonably high as compared with the tax levy on other similar property in the county". 219 Neb. at 653, 365 N.W.2d at 460.

The Nebraska Supreme Court implicitly acknowledges the difference in payment procedure for bonds and warrants. To determine an appropriate tax levy for the payment of warrants, the trier of fact must determine that such tax levy is not reasonably high in comparison with the tax levy on similar property in the county. Although the Supreme Court did not have before it a question of the tax levy for payment of bonds, this Court concludes that, if it had the opportunity, the Nebraska Supreme Court would interpret § 31–755 to mean that the SID was required to set a tax levy high enough to pay the annual installment of principal and interest on such bonds without regard to the reasonableness of the levy in relation to the tax levy on similar property in the county.

The Nebraska Statutes concerning sanitary and improvement districts have been amended many times since 1949. The basic amendments in 1967, 1976 and 1982 appear to change warrants and bonds from totally dissimilar instruments with regard to length to maturity, interest payment requirements, redemption rights, and payment procedures, to instruments which are now similar in most respects. However, the mandatory nature of the language in § 71–355 concerning the tax levy for payment of bonds and the prohibitive nature of the language concerning the tax levy for payment of warrants leads this Court to believe that there is a significant difference in priority of payment as between warrantholders' and bondholders' rights under the Nebraska Statute. This Court, therefore, concludes that, notwithstanding the various statutory amendments, the intent of the Nebraska legislature was and still is to provide that bonds get paid under all circumstances and warrants get paid if the District Court finds that the SID has sufficient assets for such payment or finds that a tax levy can be set which provides for full payment but does not make such tax levy unreasonably high as compared with

the tax levy on other similar property in the county.

A separate journal entry shall be filed entering judgment in favor of the bondholder rights over the rights of the warrantholders.