In the Matter of SANITARY AND IMPROVEMENT DISTRICT 65 OF SARPY COUNTY, NEBRASKA, Debtor/Plaintiff,

v.

FIRST NATIONAL BANK OF AURORA and Edmund W. Hollstein, Defendants.

No. CV. 86–0–1031.
Bankruptcy No. 85–756.

United States District Court,
D. Nebraska.

Oct. 29, 1987.

Gary J. Nedved, Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., Lincoln, Neb., for Off. Creditors' Comm.

Richard J. Pedersen, Baird, Holm, McEachen, Pedersen, Homann & Strasheim, Omaha, Neb., for NE Sec. Industry. Assoc.

Wm. R. Hadley, Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., Omaha, Neb., for Off. Bondholders' Cred. Comm.

Kenneth C. Stephen, Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb., for Amicus Curiae, Dain Bosworth.

Ronald W. Hunter, Omaha, Neb., for FirsTier Bank.

Robert C. Doyle, Walsh, Fullenkamp, Doyle, & Rau, Omaha, Neb., for Sanitary and Imp. Dist. 65 of Sarpy County, Neb.

## MEMORANDUM AND ORDER

STROM, District Judge.

This matter is before the Court on Edmund W. Hollstein's appeal of the Bankruptcy Court's order of December 2, 1986 (Filing No. 1) 73 B.R. 205. This action involves bankruptcy proceedings of Sanitary and Improvement District 65 of Sarpy County, Nebraska (hereinafter "debtor" or

"SID 65"). Hollstein is named representative of the official class of warrantholders of SID 65.

After instituting Chapter 9 bankruptcy proceedings, the debtor filed an adversary proceeding seeking a declaratory judgment regarding the relative priority of bondholders as opposed to warrantholders under Nebraska law. United States Bankruptcy Judge Timothy Mahoney ruled that "Nebraska Revised Statutes § 31–755 (Reissue 1985) provides a statutory payment priority in favor of the obligations to bondholders. Therefore, the SID may classify the claims of bondholders different from and superior to the claims of warrantholders."

The parties do not dispute the bankruptcy court's findings of fact. Pertinent facts are set forth in the bankruptcy court's decision and need not be repeated here.

The standard of review to be applied by this Court is that the bankruptcy court's findings of fact are not to be overturned unless clearly erroneous; however, its conclusions of law are subject to *de novo* review. *In re Martin*, 761 F.2d 472, 474 (8th Cir.1985); *see also*, Bankr.R. 8013. With that standard in mind, and upon careful consideration of the briefs of the parties and *amici curiae*, the court finds the bankruptcy court should be affirmed.

■ Warrantholders first contend that general unsecured claims must be placed in the same class in Chapter 9 proceedings. Bankruptcy Code § 1122 governs classification of claims. That section provides:

[A] plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a). That section applies in its entirety to cases brought under Chapter 9. 11 U.S.C. § 901; *4 Collier on Bankruptcy* ¶ 901.03[34] (15th Ed.1979). "Classification is simply a method of recognizing a difference in rights of creditors which calls for difference in treatment. The statute accords the Court a broad latitude in classification of creditors, and classification should be based on substantial differences in the nature of claims." *Scherk v. Newton*, 152 F.2d 747, 750 (10th Cir.1945).

"[U]nless the claims entitle their holders to substantively different rights, they are not entitled to separate classification." *4 Collier on Bankruptcy* at ¶ 907.03[34]. However, "[t]he Code does not require all non-priority pre-petition unsecured claims to be placed within a single class." *5 Collier on Bankruptcy* ¶ 1122.03[4]. "[T]he Code also implicitly recognizes that separate classification of unsecured claims may be appropriate." *Id.* Accordingly, classification of unsecured claims is proper under certain circumstances.

Cases in which courts have denied separate classification have not involved any difference in substantive rights. *See, e.g., Taylor v. Provident Irrig. Dist.*, 123 F.2d 965, 966–67 (9th Cir.1941) (separate classification of bonds denied where difference based solely on maturity dates), *cert. denied, sub nom. Deere v. Southern Pacific*, 315 U.S. 819, 62 S.Ct. 914, 86 L.Ed. 1217 (1942); *West Coast Life Ins. Co. v. Merced Irrig. Dist.*, 114 F.2d 654, 672 (9th Cir.1940) (separate classification of matured and unmatured bond obligations improper where both depend on taxing power of district for payment), *cert. denied, sub nom. Pacific Nat. Bank v. Merced Irrig. Dist.*, 311 U.S. 718, 61 S.Ct. 441, 85 L.Ed. 467 (1941); *Luehrmann v. Drainage Dist. No. 7*, 104 F.2d 696, 701 (8th Cir.) (separate classification improper where based solely on date of issue of bonds), *cert. denied, sub nom. Haverstick v. Drainage Dist.*, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939); *Vallette v. City of Vero Beach, Fla.*, 104 F.2d 59, 63 (5th Cir.1939) (holding that bondholders who had obtained a judgment were not entitled to separate classification from bondholders who had not obtained a judgment: "[t]he basis of classification is thus seen to be (a) the source of normal payment, (b) security by pledge of specific property or revenue, (c) preference provided by law"), *cert. denied*, 308 U.S. 586, 60 S.Ct. 110, 84 L.Ed. 491 (1939); and *Supreme Forest Wooden Circle v. City of Belton*, 100 F.2d 655, 657 (5th Cir.1938) (under Texas law, non-negotiable warrants and negotiable bonds could be put in the same class).

█ The issue for resolution, then, is whether the claims herein entitle their holders to substantively different rights so as to require separate classification. Warrantholders assert that Nebraska law grants no priority to bondholders over warrantholders.[1] Under Nebraska law, it is clear that bondholders and warrantholders are accorded different rights of repayment. Neb.Rev.Stat. § 31–755 (1984), provides:

> For the purpose of paying the costs of the improvements herein provided for, the Board of Trustees or the Administrator, after such improvements have been completed and accepted, shall have the power to issue negotiable bonds of any such district, to be called sanitary and improvement district bonds, payable in not to exceed thirty years.... For the purpose of making partial payments as the work progresses, warrants may be issued by the Board of Trustees or the Administrator upon certificates of the engineer in charge showing the amount of work completed and materials necessarily purchased and delivered for the orderly and properly continuation of the project, in a sum not to exceed ninety-five (95%) of the cost thereof.

Neb.Rev.Stat. § 31–755 (1984).

With respect to bonds, the statute provides that the property of the SID is to be taxed in an amount sufficient to pay the interest and principal on bonds as they become due:

> [T]here shall be levied annually a tax upon the actual value of all the taxable property in such district except intangible property which, together with such sinking fund derived from special assessments, shall be sufficient to meet payment of interest and principal on all bonds as such become due.

*Id.* With respect to warrants, however, the statute provides:

> [S]uch warrants need not be retired on such date or within such five year period and shall not be in default if ... the district does not have the funds to retire such warrants and either (1) the district is unable to sell its bonds in amounts sufficient to retire such warrants, or (2) an unreasonably high tax levy as compared to the level on other similar property in the county, would be required in order to cover the debt service requirements on bonds issued to retire such warrants.

*Id.*

It is clear under the statute that the taxing authority of the district may be used without limit to satisfy its obligation to pay the bondholders. In contrast, in order to redeem warrants, the district is limited to a tax levy which is not unreasonably high as compared with the tax levy on other similar property in the county. Thus, the SID is required to levy a tax sufficient to make the interest and principal payment on the bond. The SID, however, could not levy a tax sufficient to pay off warrants if the tax levy were "unreasonably high." The clear implication is that warrantholders must wait for payment until new bonds can be issued or a new, reasonable tax levied. Accordingly, there is a substantive difference in payment rights afforded bondholders as opposed to warrantholders under Nebraska law. *See, e.g., In re Application of Sanitary and Improvement District No. 65,* 219 Neb. 647, 365 N.W.2d 456 (1985) (implicitly acknowledging the difference in payment procedures for bonds and warrants). Moreover the practical effect of the difference in the two instruments is recognized in the fact that warrants carry a higher interest rate and are perceived to be a greater risk as an investment.

---

1. To that effect, warrantholders also argue that legislative history shows no priority of bondholders over warrantholders. Specifically they argue that legislative bill L.B. 868, which was later enacted into law as Neb.Rev.Stat. § 31–778, originally provided that outstanding bonds and warrants should be paid pro rata in the event of insolvency. That language was subsequently deleted from the bill. Warrantholders infer that the proposed language was a statement of existing law and was deleted as surplusage. Bondholders, on the other hand, argue that the submission of such language indicates that existing law was the opposite. This Court can divine no legislative intent one way or the other from the legislative bill and subsequent legislation.

Warrantholders also argue that even if Nebraska law creates a preference for bondholders, a state-created priority cannot be given effect in a bankruptcy proceeding if it conflicts with the priority established in 11 U.S.C. § 507. The issue presently before the Court does not involve a § 507 priority. The bondholders acknowledge that claims entitled to priority under § 507 have priority over the unsecured claims of those bondholders. At issue in this case is a further classification of unsecured creditors pursuant to § 1122(a). As illustrated by the foregoing discussion, the classification is appropriate. Accordingly,

IT IS ORDERED that the bankruptcy court's order of December 2, 1986, is affirmed.