STATE OF NEBRASKA EX REL. PAUL L. DOUGLAS, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, APPELLANT, V. FRED A. HERRINGTON, TAX COMMISSIONER OF THE STATE OF NEBRASKA, APPELLEE.

294 N. W. 2d 330

Filed June 24, 1980. No. 42751.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellant.

Knudsen, Berkheimer, Beam, Richardson & Endacott, Wallace A. Richardson, and Robert A. Cannon, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an appeal from a declaratory judgment action by the State on the relation of the Attorney General against the Tax Commissioner to obtain a determination of the constitutionality of Neb. Rev. Stat. §§ 77-1349 to 1354 (Cum. Supp. 1978), passed in 1977, as part of 1977 Neb. Laws, L.B. 131. The District Court for Lancaster County, Nebraska, held that the sections challenged were constitutional, dismissed the petition, and overruled the relator's motion for a new trial. We reverse.

The Attorney General contends that the challenged statutes are unconstitutional in several respects: That the sections are vague and uncertain, arbitrary and capricious, deny due process of law, authorize the Tax Commissioner to usurp functions of the State Board of Equalization and Assessment, and create unreasonable classifications. We con-

sider the first of these contentions and conclude that the sections are defectively vague and unconstitutional.

A background of the law is necessary. In 1977, the Legislature passed L.B. 131, which became effective September 2, 1977. Sections 1 to 6 of the bill are codified as §§ 77-1349 to 1354. Section 77-1349 states, in part: "The purpose [of L.B. 131] is to achieve equalization between the several counties while not causing undue fluctuations in valuation and taxes." Subsequent sections recognize the duty of every county to annually value for tax purposes property located within its borders; create a statutory planning procedure whereby the county assessor, the county board, and the State Tax Commissioner annually identify the process to be used to achieve a uniform standard of valuation for all property in that county for that year; and impose a penalty upon any county which fails to revalue all property within the county each year.

The Attorney General argues that the provisions of §§ 77-1349 to 1354 are so vague and uncertain as to be unenforceable. We believe the most doubtful of these sections to be § 77-1350(1), which reads: "Each county which has not implemented a revaluation plan shall revalue or implement the revaluation of all lands and improvements in such county on or before January 1, 1978, and each year thereafter."

First, we will consider the assertion that L.B. 131 is unconstitutionally vague and uncertain in that it fails to define the term "revalue," as used in § 77-1350(1), or to state since what date a county must have revalued its property. Since a county must revalue every year and can comply with § 77-1350(1) by: (1) Implementing a "revaluation plan"; (2) Revaluing all property by a statutorily acceptable method; or (3) Implementing the revaluation of all land and improvements in such county, it is necessary to understand the meaning of the term. A pen-

alty is imposed by § 77-1354 against a county for failure to revalue according to § 77-1350(1). In *State v. A.H.,* 198 Neb. 444, 253 N.W.2d 283 (1977), we stated that the vagueness test applies to civil as well as criminal statutes. Clarity should be particularly demanded of a statute which would impose very substantial penalties on counties violating the statute and on taxpayers thereof.

In light of the legislative purpose, expressed by § 77-1349, "revalue" contemplates the process of raising or lowering the total assessments on all the property as between different taxing districts so that the value of the whole tax imposed on each taxing district is justly proportioned to the value of the taxable property within its limits, in order that one county or taxing district will not pay a higher tax in proportion to the value of its taxable property than another. Indeed, the legislative record on L.B. 131 indicates that:

> [T]he intent of the Nebraska Legislature is to get equalization in the area of real estate property taxes. . . . All we do know for sure is that the equalization, the reappraisals haven't been accomplished in terms of putting them into effect, and the properties are, in many cases, being assessed completely differently. . . . [I]f you'll adopt this amendment, you will accomplish what we all claim we want, and that is to the degree that real estate property taxation can be fair, you're going to have at least the equality or close to equality.

Floor Debate at 03509-10. Although the purpose is clear, the method by which it is to be achieved is unclear.

The respondent contends that "revalue" simply means to repeat the process of valuation already established by statute. The trial court concluded that "revalue," as used in § 77-1350(1), refers to the existing duty to determine the actual value of property

for the current year pursuant to Neb. Rev. Stat. § 77-1301 (Reissue 1976). The objective of § 77-1301 is a comprehensive reappraisal of real estate. *Carpenter v. State Board of Equalization & Assessment,* 178 Neb. 611, 134 N.W.2d 272 (1965). Any attempt to define "revalue" in terms of the duty imposed by § 77-1301 would confine the term to a reappraisal. We find no support in the legislative history, or in the statute, for the proposition that the procedures set out in § 77-1301 are the exclusive method of "revaluing." Under the trial court's view, a county which had reappraised its lands and improvements in 1954 and had some values changed by the board of equalization would comply with § 77-1350(1) because it would satisfy the requirements of § 77-1301. Clearly, this was not the Legislature's intent.

William Peters, the Tax Commissioner at the time of trial, testified that "revalue" means to come to current actual value in compliance with the procedures set out in § 77-1350(1). According to § 77-1350(1), only counties which have not implemented a revaluation plan must revalue. The language implies that some counties had implemented revaluation plans before the effective date of the bill, thus satisfying the terms of the statute. The Tax Commissioner would write the words "which has not implemented a revaluation plan" completely out of § 77-1350(1) since he equates such a plan with the procedures set forth in L.B. 131. There were no "revaluation plans" defined before the passage of L.B. 131, but the bill clearly assumed that some counties had implemented revaluation plans. If some counties presumably had implemented revaluation plans prior to the effective date of L.B. 131, it is necessary to ask, since what date must it have implemented a revaluation plan? There is no date specified in the statute. Theoretically, a reappraisal conducted in 1955 might satisfy the terms of the statute, since the statute specifies no date by which the "revaluation

plan" must have been implemented. The established test for vagueness in a statute is whether it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Lewitus v. Colwell,* 479 F. Supp. 439 (D. Md. 1979). We are unable to determine with any reasonable degree of certainty the meaning of the term "revalue" or "revaluation plan."

Another illustration of the vagueness problem lies in the distinction between "revalue" and "implement a revaluation." As noted, there are three ways by which a county may determine actual value in order to comply with § 77-1350(1): implementation of a revaluation plan, a revaluation, or implementation of a revaluation. The difference between "revalue" and "implement a revaluation" is not defined by statute. The legislative history of L.B. 131 indicates that the Legislature chose to broaden and change its approach by deleting the reference to the duties of counties which had not implemented a *reappraisal* and substituting both the concept and the specifics of the revaluation plan. A reappraisal is completed by an appraisal firm and submitted to the county. It then has to be approved by the Tax Commissioner, according to Neb. Rev. Stat. § 77-1301.01 (Reissue 1976), and implemented for purposes of property taxation, as provided by Neb. Rev. Stat. § 77-1301.06 (Reissue 1976). A reappraisal could thus represent two distinct events, the approval of the reappraisal, which could occur more than a year before it was put into effect, and the implementation thereof. It is impossible to equate "revalue" and "reappraisal" because of the requirement that the revaluation be done each year thereafter.

Under the interpretation of "revalue" given by either the trial court or the Tax Commissioner, the difference between "revalue" and "implementing a revaluation" appears illusory. The statutory proce-

dure requiring the county assessor to notify the county board of his plans, pursuant to § 77-1350(2), and the sending of materials by the county board to the Tax Commissioner, pursuant to § 77-1351, would obviously not constitute revaluing. "Revaluing" could not occur until the county forwarded its abstract of assessments to the State Board of Equalization and Assessment, pursuant to Neb. Rev. Stat. § 77-1514 (Reissue 1976). If some distinction is intended between the terms, the statute would seem to indicate that a county could comply with the law by revaluing, even though the revaluation was not subsequently implemented.

The Legislature has chosen the disjunctive "or," clearly indicating that any one of the alternatives will satisfy the statutory obligation. In *Blue Flame Gas Assn. v. McCook P. P. Dist.,* 186 Neb. 735, 186 N.W.2d 498 (1971), we said that provisions that are so vague, general, and indefinite as to be incapable of practical application are arbitrary and unreasonable and, therefore, unconstitutional.

Finally, we will consider the relator's contentions concerning the use of the date January 1. Section 77-1350 requires counties to revalue or implement a revaluation *"on or before* January 1, 1978." (Emphasis supplied.) A penalty is assessed by § 77-1354 against counties which do not revalue pursuant to § 77-1350 prior to January 2, 1978, and the same date in subsequent years. Section 77-1301 requires all real property to be assessed as of January 1 at 12:01 a.m. Examination of the property might begin before the assessment year commenced, but actual assessment must be within the year itself because, prior to that, the valuation would be speculative. *City of Norfolk v. Bell,* 141 S.E. 844 (Va. 1928). Therefore, the Legislature's authorization of a revaluation "before" January 1, 1978, appears to be a nullity. A revaluation made "before" January 1 would be inconsistent with the present statutes which contemplate notice

to taxpayers of proposed changes pursuant to Neb. Rev. Stat. § 77-1506 (Reissue 1976). It is fundamental that a statute which is incorporated into an existing statutory scheme must be interpreted in light of that statutory scheme to be consistent therewith. *Nebraska District of Evangelical Lutheran Synod v. McKelvie,* 104 Neb. 93, 175 N.W. 531 (1919); *State ex rel. Meyer v. County of Banner,* 196 Neb. 565, 244 N.W.2d 179 (1976).

The respondent attempts to avoid the problem inherent in the use of "before" by amending the statute to provide that the revaluation or implementation of the revaluation shall be made "as of" January 1, ignoring the word "before" in § 77-1350.

> In the construction of a statute, effect must be given, if possible, to all its several parts. No sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary, and popular sense, should be taken into account, in order to determine the legislative will.

*Pierce Co. v. Century Indemnity Co.,* 136 Neb. 78, 84, 285 N.W. 91, 95 (1939), quoting from *Hagenbuck v. Reed,* 3 Neb. 17 (1873).

We cannot assume that the Legislature intended that the revaluation be done "as of" January 1, when it said "on or before." The lack of clarity cannot be corrected by administrative or judicial construction. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute. *Bachus v. Swanson,* 179 Neb. 1, 136 N.W.2d 189 (1965); *Doolittle v. County of Lincoln,* 191 Neb. 159, 214 N.W.2d 248 (1974).

It requires little argument to see that § 77-1350(1)

is not severable and that the whole act must fail. The rule is that when invalid portions are so interwoven with the rest of the act that the act may not be operative with the void portions eliminated, the whole act fails. *City of Scottsbluff v. Tiemann,* 185 Neb. 256, 175 N.W.2d 74 (1970).

In light of the conclusions we have reached, it is unnecessary to discuss the further contentions that have been raised in the briefs. We hold that § 77-1350(1) is so vague and indefinite as to be incapable of practical application. Accordingly, we reverse the decision of the District Court.

REVERSED.