REQUESTED BY: Senator Don Wesely Nebraska State Legislature State Capitol, Room 808 Lincoln, Nebraska 68509
Dear Senator Wesely:
You have requested the opinion of this office regarding an amendment to LB 970 which relates to salary limitations for political subdivisions and vendors of services reimbursed by the Department of Public Welfare. You have posed several specific inquiries set forth below regarding the effect of the amendment if it is adopted.
 1. Would the employees of the Lincoln Electric System be considered employees of the City of Lincoln for purposes of this amendment?
For our consideration, you have provided a copy of that portion of the Lincoln Municipal Code which relates to the Lincoln electric system, i.e., sections 2.55.010 through 2.55.100. Pursuant to said sections, the Lincoln city council has created the Lincoln electric system administrative board and has delegated to it, inter alia, the authority to fix the salaries and other employment benefits of all officers or employees of the Lincoln electric system. Sections 2.55.010 and 2.55.070(a), Lincoln Municipal Code; Neb.Rev.Stat. § 15-309 (Reissue 1977). The budget of the Lincoln electric system is submitted by the administrative board to the city council for approval, subject to the veto power of the mayor. Section 2.55.010, Lincoln Municipal Code.
Section 3 of the amendment to LB 970 at issue provides in pertinent part:
 The governing body of a city under home rule charter shall file with the Auditor of Public Accounts on or before September 1, 1982, a certified copy describing the general salary policy established by such governing body for its employees for such political subdivision's fiscal year 1982-83.
The authority over salary policies for employees of the Lincoln electric system resides with the city council, notwithstanding the fact that the council has chosen to delegate some of its authority to an administrative board. Thus in our opinion, the better response to your inquiry is that employees of the Lincoln electric system are considered employees of the City of Lincoln for the purposes of this amendment, as partially quoted above.
 2. If LES employees are considered city employees, would the restriction on wage increases apply for fiscal year 1982, even though the fiscal year for LES began January 1, 1982?
As set forth in the above quoted portion of the amendment to LB970, the statement to be filed describes the salary policy for the political subdivision's fiscal year 1982-83. It is our understanding that the fiscal year for the City of Lincoln, the political subdivision in this instance, runs from September 1 to August 31. Lincoln MunicipalCharter, Article IX, section 1. Thus, in our opinion, the statement of general salary policy to be filed by September 1, 1982, for all employees of the City of Lincoln, including employees of the Lincoln electric system, would encompass the period of time from September 1, 1982, to August 31, 1983.
 3. Does this amendment limit all employees of a political subdivision from receiving a salary increase in excess of the state policy or is it satisfactory if the political subdivision's total salary increase is within the general salary policy provided for state government employees?
The amendment at issue requires a political subdivision, in order to receive appropriations from the General Fund, to file a statement describing a general salary policy for its employees which does not exceed the general salary policy established for state employees. Additionally, section 6 of the amendment provides in pertinent part as follows:
 If the auditor discovers that the stated policy is not being followed and that the employees of such political subdivision are receiving salaries which result in an actual salary policy which exceeds the general salary policy provided for state government employees . . ., he or she shall inform the Director to Administrative Services.
(Emphasis added.)
It is a well established rule of statutory construction that effect must be given if possible to all of its several parts and no sentence, clause or word should be rejected as meaningless or superfluous. State ex rel. Douglas v.Herrington, 206 Neb. 516, 294 N.W.2d 330 (1980).
It is our interpretation of the above quoted language, giving effect to the emphasized portion thereof, that a subdivision would be in compliance with the provisions of the amendment unless the total salary increases actually granted its employees exceeded the general salary policy established for state employees.
 4. If the Court of Industrial Relations orders a salary increase for the employees of a political subdivision in an amount which exceeds the general salary policy for state government employees, is this deemed to be the salary policy of the political subdivision which would preclude the political subdivision from being entitled to payments from the General Fund?
Pursuant to Neb.Rev.Stat. § 48-818 (Supp. 1980), the Commission of Industrial Relations (C.I.R.) is authorized to establish or alter the scale of wages for employees of the state or any of its political or governmental subdivisions. In making such a determination, the operative criteria which must be considered by the Commission is comparability to prevalent wage rates paid for similar work by workers exhibiting similar skills under similar conditions. Local private employment situations can and should be considered by the C.I.R. to determine the prevalent wage, if the criteria of § 48-818 is met. AFSCME Local No. 2088 v. County ofDouglas, 208 Neb. 511, 304 N.W.2d 368 (1981). Orders of the Commission are binding on the parties and are deemed to have the same force and effect as like orders entered by the district court. Neb.Rev.Stat. § 48-891 (Supp. 1980).
Your inquiry discloses the existence of a potential conflict between the provisions of § 48-818 and the amendment at issue. Based solely on the language of the amendment, an argument can be made that if a political subdivision fails, for any reason, to follow its stated salary policy and pays its employees wages resulting in an actual salary policy which exceeds the general salary policy for state employees, the political subdivision is in noncompliance and subject to a forfeiture of monies from the General Fund. We can only speculate regarding whether or not a court would reject this argument and refuse to penalize a political subdivision which was acting solely pursuant to a lawfully entered order of the C.I.R. At this stage, it appears to us that this potential conflict can best be resolved by legislation.
Very truly yours, PAUL L. DOUGLAS Attorney General Lynne Fritz Assistant Attorney General