EDMUND W. HOLLSTEIN AND OTHER INDIVIDUALS SIMILARLY SITUATED, APPELLANTS, V. FIRST NATIONAL BANK OF AURORA, APPELLEE.

437 N.W.2d 512

Filed March 31, 1989.   No. 88-737.

Gary J. Nedved, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellants in the U.S. Court of Appeals.

William R. Hadley, of Hauptman, O'Brien, Wolf & Hadley, P.C., for appellee in the U.S. Court of Appeals.

Richard J. Pedersen and Carol C. Knoepfler, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for amicus curiae Nebraska Securities Industry Association.

Kenneth C. Stephan, of Knudsen, Berkheimer, Richardson & Endacott, for amicus curiae Dain Bosworth, Inc.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

This matter is submitted to us, pursuant to Neb. Rev. Stat. § 24-219 (Reissue 1985), as a certified question of law from the U.S. Court of Appeals for the Eighth Circuit. Specifically, the question is:

Whether the Nebraska statutes governing sanitary and improvement districts, Neb. Rev. Stat. [§§] 31-701 et seq. (Reissue 1984), grant a priority of payment in favor of bonds over warrants so as to require that bonds be fully paid prior to utilizing revenues for payment of warrants.

This question was precipitated by the filing by Sanitary and Improvement District No. 65 of Sarpy County, Nebraska, of a chapter 9 bankruptcy petition. According to the statement of the case contained in the motion of the appellants in the U.S. Court of Appeals, which is accepted as true for the purpose of this proceeding, a declaratory judgment action pursuant to bankruptcy rule 7001 was filed by the debtor, requesting a

determination of the rights of warrantholders and bondholders under the plan of adjustment submitted by the debtor. The U.S. Bankruptcy Court found that "the intent of the Nebraska legislature was and still is to provide that bonds get paid under all circumstances," and "there is a significant difference in priority of payment as between warrantholders' and bondholders' rights under the Nebraska [statutes]." The order of the bankruptcy court was affirmed by the U.S. District Court for the District of Nebraska. Upon appeal to the U.S. Court of Appeals, and on motion of the appellants in that court, the present question of law was certified to this court.

S.I.D. No. 65 was formed in accordance with the laws of Nebraska. See Neb. Rev. Stat. §§ 31-727 et seq. (Reissue 1988). A sanitary and improvement district is a political subdivision of the state, the primary function of which is to install and maintain public improvements such as streets, sewers, utility lines, and other improvements associated with residential or commercial subdivisions.

A district initially pays for the costs of the improvements by issuing warrants to pay the contractors. At that time the S.I.D. does not have funds available to pay off the warrants because there is no significant tax base from which funds could come. Therefore, the warrants are presented to the county treasurer of the county wherein the district is located, who records the warrants with the promise to pay them when funds are available. The warrants draw interest from the time they are registered.

Contractors holding the S.I.D. warrants, wanting the money immediately, sell the warrants to investment bankers, who in turn sell them to investors. Warrants are essentially a construction loan and represent interim financing for the improvements. Under existing state law, warrants can be paid from funds expected to be received in the future, including, but not limited to, special assessment collections, proceeds of bond issues, or levies on taxable property in the district. See § 31-727(5)(d).

Bonds, on the other hand, are the long-term financing instrument of the district. Bonds are generally issued to pay off the warrants and accrued interest on the warrants. The bonds

are paid off with funds from special assessments, tax levies, or revenues received by the S.I.D.

Warrants of S.I.D. No. 65 were issued on various dates commencing on May 21, 1973, and as of April 5, 1985, the district had outstanding warrants in the total principal amount of $4,285,287.16, with accrued interest of $1,496,889.96.

Bonds of S.I.D. No. 65 were issued in March of 1977 in the total amount of $1,500,000. Proceeds of the bond issue were used to partially redeem outstanding warrants. As of April 5, 1985, the district had outstanding bond principal in the amount of $1,275,000, with accrued interest of $48,625.44. The bonds issued by S.I.D. No. 65 to redeem the district's warrants were general obligation bonds because the only source of revenue for repayment of the bonds was the general taxing authority of the district.

All parties agree S.I.D. No. 65 is unable to generate sufficient revenue to retire the outstanding warrants and bonds in full. A dispute over whether the claims of bondholders, warrantholders, or neither should be paid in full before payment is made on the claims of the other arose because the warrants, bonds, and all other documents of S.I.D. No. 65 are silent on the issue of priority of repayment between bonds and warrants. Therefore, resolution of the dispute depends upon the general law and interpretation of Nebraska statutes relating to sanitary and improvement districts.

The foregoing facts have been gleaned from the record furnished by the U.S. Court of Appeals of testimony and evidence originally adduced in the bankruptcy court.

The general law is of little help except for an isolated statement found in 15 E. McQuillin, The Law of Municipal Corporations § 42.02 at 500 (3d ed. 1985), that "[a] warrant is included within the term 'an instrument in writing,' but is to be distinguished from a municipal bond." The authority for this statement was found by the author in *Shelley v. St. Charles County Court*, 21 F. 699 (E.D. Mo. 1884). In *Shelley*, the court said at 700-01:

> There is a vast difference between bonds and warrants. Warrants are general orders payable when funds are found, and there is propriety in the rule providing that

they shall be paid in the order of presentation, the time of presentation to be indorsed by the treasurer on the warrants. But bonds are obligations payable at a definite time, running through a series of years. They are payable when the time of their maturity arrives, independent of any presentation.

It is therefore necessary that we look to our own statutes.

Warrant shall mean an investment security under Article 8 of the Uniform Commercial Code in the form of a short-term *interest-bearing order* payable on a specified date issued by the board of trustees or administrator of a sanitary and improvement district to be paid from funds expected to be received in the future, including, but not limited to, property tax collections, special assessment collections, and proceeds of sale of general obligation bonds.

(Emphasis supplied.) § 31-727(5)(d).

General obligation bond shall mean an investment security under Article 8 of the Uniform Commercial Code in the form of a long-term *written promise to pay* a specified sum of money, referred to as the face value or principal amount, at a specified maturity date or dates in the future, plus periodic interest at a specified rate.

(Emphasis supplied.) § 31-727(5)(e).

The district may borrow money for corporate purposes and issue its general obligation bonds therefor and *shall annually levy a tax* on the actual value of all the taxable property in the district, except intangible property, *sufficient to pay the interest and principal on the bonds and* for the purpose of creating a sinking fund for the maintenance and repairing of [improvements].

(Emphasis supplied.) § 31-739(1).

The board of trustees shall have power, in connection with the issuance of any warrants or bonds of the district, *to agree to make a specified minimum levy* on taxable property in the district to pay, or *to provide a sinking fund to pay, principal and interest on warrants and bonds of the district . . . .*

(Emphasis supplied.) § 31-740.

All special assessments provided by sections 31-727 to 31-762 and all connection charges collected shall, when levied, constitute a *sinking fund for the purpose of paying the cost of the improvements* herein provided for with allowable interest thereon and shall be solely and strictly applied to such purpose to the extent required . . . .
(Emphasis supplied.) § 31-754.

For the *purpose of paying the cost of the improvements* herein provided for, the board of trustees or the administrator, after such improvements have been completed and accepted, shall have the *power to issue negotiable bonds* of any such district, to be called sanitary and improvement district bonds, payable in not to exceed thirty years. . . . Such bonds shall bear interest payable annually or semiannually. . . . For the purpose of *making partial payments* as the work progresses, *warrants may be issued* by the board of trustees or the administrator upon certificates of the engineer in charge showing the amount of work completed and materials necessarily purchased and delivered for the orderly and proper continuation of the project, in a sum not to exceed ninety-five percent of the cost thereof. *Warrants issued prior to July 10, 1976*, for capital outlays of the district *shall become due and payable twelve months after April 21, 1982*, and warrants issued on or after July 10, 1976, for capital outlays of the district shall become due and payable not later than five years from the date of issuance; *Provided*, that such *warrants need not be retired on such date or within such five-year period and shall* not be in default *if* the *district court of the county shall determine*, upon application to it by the district, that the *district does not have the funds to retire such warrants* and either (1) the *district is unable to sell its bonds* in amount sufficient to retire such warrants, *or* (2) an *unreasonably high tax levy, as compared to the levy on other similar property in the county, would be required in order to cover the debt service requirements on bonds issued to retire such warrants. . . . [T]he district court may make such orders concerning retirement of the warrants* as it shall determine proper under the

circumstances of the district including ordering an increase in the tax levy of the district to provide funds for warrant redemption, except that *no court-ordered tax levy for redemption of warrants shall cause the total tax levy of the district to be unreasonably high as compared* with the tax levy of other similar property in the county. Such warrants shall draw interest at such rate as fixed by the board of trustees or the administrator and endorsed on the warrants, from the date of presentation for payment and shall be redeemed and paid from the proceeds of special assessments or from the sale of the bonds issued and sold as provided in this section or from any other funds available for that purpose. *Bonds to redeem such warrants shall be issued as soon as economically feasible and* to the extent warrants are not redeemed from bond proceeds or other funds available for such purpose, *the district shall make a tax levy to provide a sinking fund for warrant redemption, except that such obligation shall not require a total tax levy by the district which shall be unreasonably high as compared with the tax levy on other similar property in the county. . . .* The *board of trustees* or the administrator *shall levy special assessments on all lots*, parcels, or pieces of real estate benefited by the improvement to the extent of the benefits to such property, *which, when collected, shall be set aside and constitute a sinking fund for the payment of the interest and principal of such bonds. In addition to the special assessments* provided for in this section, *there shall be levied annually a tax upon the actual value of all the taxable property in such district* except intangible property *which, together with such sinking fund* derived from special assessments, *shall be sufficient to meet payments of interest and principal on all bonds as such become due.* Such tax shall be known as the sanitary and improvement district tax and shall be payable annually in money.

(Emphasis supplied.) § 31-755.

The board of trustees or the administrator shall have the power to negotiate a scaling, discounting, reduction in

interest rate, or any *other compromise* of any or all of the *bonds, warrants,* or *other indebtedness* of the district with the owners or holders of such indebtedness.

(Emphasis supplied.) § 31-778.

This court has established certain principles for the interpretation of statutes. When interpreting a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Adkisson v. City of Columbus,* 214 Neb. 129, 333 N.W.2d 661 (1983). It is not within the province of the court to read meaning into a statute that is not warranted by legislative language. *State ex rel. Douglas v. Herrington,* 206 Neb. 516, 294 N.W.2d 330 (1980).

Statutes relating to the same subject are in pari materia and should be construed together. *McGowen v. Nebraska State Bank,* 229 Neb. 471, 427 N.W.2d 772 (1988). In construing a statute, the legislative intention is to be determined from general consideration of the whole act, with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately. *Matzke v. City of Seward,* 193 Neb. 211, 226 N.W.2d 340 (1975).

Applying these principles, we find no quarrel with the reasoning of the judge of the bankruptcy court or that of the judge of the U.S. District Court on appeal. It is obvious that the Legislature did not anticipate nor provide for treatment of warrantholders or bondholders in the case of an S.I.D. bankruptcy. Nevertheless, the two are to be treated differently regarding payment, if and when warrants become due and payable there are insufficient funds available to make such payment.

Section 31-755 provides for the retirement of warrants when due *unless* the district court determines that the district is unable to sell its bonds in an amount sufficient to retire such warrants, *or an unreasonably high tax levy* when compared to the levy of other similar property in the county would be required to cover the debt service requirements on bonds issued

to retire such warrants. On the other hand, § 31-755 provides that in addition to special assessments, there *shall be levied annually* a tax which, together with the sinking fund from special assessments, *shall be sufficient* to meet payments of interest and principal on *all bonds* as such become due.

As suggested by the district court, the taxing authority of the district must be used without limit to satisfy its obligation to pay the bondholders; whereas, in order to pay the warrants, the authority of the district is limited to levying of a tax which is not unreasonably high as compared with the tax levy on other similar property in the county.

Our answer to the certified question is that the statutes of the State of Nebraska do grant a priority in favor of bonds over warrants so as to require that bonds be fully paid according to their terms prior to utilizing revenues for payment of warrants.

Judgment is entered accordingly.

JUDGMENT ENTERED.