In the Matter of SANITARY & IMPROVEMENT DIST., # 7, Debtor.

**Bankruptcy No. BK85–39.**

United States Bankruptcy Court,
D. Nebraska.

May 3, 1989.

See also, Bkrtcy., 96 B.R. 967.

Richard Butler and Charles Humble, Lincoln, Neb., for debtor.

Robert Craig and Michael A. Harsh, Omaha, Neb., for St. Paul Fire & Marine.

Paul J. Peter, Lincoln, Neb., for warrantholders' committee.

MEMORANDUM REGARDING CONFIRMATION OF DEBTOR'S FOURTH AMENDED AND SUBSTITUTED PLAN OF ADJUSTMENT AS MODIFIED (dated February 15, 1989)

TIMOTHY J. MAHONEY, Chief Judge.

This Sanitary Improvement District, a subdivision of the State of Nebraska filed for relief under Chapter 9 of the United States Bankruptcy Code in 1985. Its authority for such filing is Neb.Rev.Stat. Section 77–2419 (Reissue 1986).

Before the Court is the Fourth Amended and Substituted Plan of Adjustment as Modified dated February 15, 1989. This plan has, pursuant to the Bankruptcy Code been ballotted upon by the creditors of this debtor. Those creditors include two classes, bondholders and warrantholders. The ballot record previously provided to the Court indicates that each class has approved the plan as proposed with the necessary number of ballots to obtain confirmation, subject only to the right of dissenting creditors to object to the confirmation of the plan.

An objection has been filed by a bondholder, St. Paul Fire & Marine Insurance Company. The objection was heard at an evidentiary hearing held by this Court on April 27, 1989. The issues at that hearing were included in a joint pretrial statement delivered to this Court on the day of the trial. Those issues include, from the debtor's point of view:

1. Whether debtor's Plan, which has been accepted by all classes of creditors, is in the best interest of creditors?

From the objecting party's point of view, the issues are numerous:

1. Is the plan in the "best interest of creditors" under 11 U.S.C. § 943(b)(7) under the 1988 amendments to Chapter 9?

2. May the debtor divert its annual revenues to warrantholders at the expense of the return to bondholders and simultaneously return to bondholders less than their total claims contrary to the holding of the Nebraska Supreme Court in the case of *Hollstein v. First National Bank of Aurora?*

3. May the debtor confirm a plan pursuant to which it is not required to levy a tax sufficient to meet payment of interest and principal on all bonds existing at the petition date, contrary to the requirements of Neb.Rev.Stat. Section 31–755?

4. May the debtor impair its contract with bondholders contrary to Article 1, Section 10 of the United States Constitution?

5. Does the debtor's plan propose a remittance or commutation of taxes prohibited by Article VIII, Section 4 of the Nebraska Constitution?

6. May the debtor confirm over objection a plan which fails to provide a market rate of interest on bonds?

7. May the debtor confirm over objection a plan which fails to utilize the assets of the estate to retire its obligation?

8. May the plan fail to provide for postpetition interest if the asset base is sufficient to provide interest?

9. May the plan require a bondholder to discount his bonds by approximately twenty-eight percent in order to make annexation easier for debtor?

10. Does a plan which fails to raise sufficient taxes to retire the debtor's bond obligation in the best interest of creditors when the ability to raise taxes and/or utilize other assets would result in full payment to the bondholders?

The decision of this Court is that this plan may not be confirmed because it does not meet one of the confirmation standards at 11 U.S.C. § 943. That standard is found at Section 943(b)(4) and states that the court shall confirm the plan if the debtor is not prohibited by law from taking any action necessary to carry out the plan. That

section, when read with Section 943(b)(7) which provides that the Court shall confirm the plan if the plan is in the best interest of creditors and is feasible precludes confirmation.

Because both classes of creditors have approved this plan and because of the significant interest in the ability of a debtor in Chapter 9 to modify state law rights of creditors, specific findings of fact and conclusions of law will be provided.

The legal framework within which this case comes before this Court concerns not only Chapter 9 of the Bankruptcy Code but the Nebraska Statutes Section 31–701 et seq. Those statutes provide the authority and limitations of sanitary improvement districts with regard to financing their governmental operations.

Historically, Chapter IX of the previous Bankruptcy Act was adopted in the 1930's to enable state created governmental entities to adjust their debt obligations when the governmental entities were unable to raise sufficient taxes to pay those obligations in full. The states are prohibited by the United States Constitution at Article 1, Section 10 from impairing the obligation of contracts. This was construed in the 1930's and is still construed to mean that if a governmental entity has entered into a contract such as a bond issuance with creditors, the state cannot significantly alter the rights of those bondholders by, for example, requiring the bondholders to "settle up" by taking less payment than such bondholders were permitted under the terms of the bond issuance. Because of that constitutional prohibition, it appeared to members of Congress that the only remedy for both bondholders and governmental entities with financial difficulty was to provide an overall federal method of relief. Therefore, Chapter IX was adopted and eventually approved by the Supreme Court over objections that the Chapter interfered with the rights of the states and the municipal governments to organize and govern their own affairs.

The Bankruptcy Chapter IX as amended during the 1970's was included in the Bankruptcy Code of 1978 as Chapter 9. This Chapter, adopted, as was the original and amended Chapter IX under the authority of Congress pursuant to Article 1, Section 8 of the United States Constitution authorizing Congress to enact uniform laws on the subject of bankruptcies throughout the United States permits a governmental entity, other than a state, to file a petition for relief under Chapter 9, if authorized by state law, in order to adjust its financial obligations. The governmental entity is authorized by Chapter 9 as it incorporates Chapter 11 of the Bankruptcy Code to modify the rights of holders of claims against the debtor pursuant to Section 1123(a)(5)(F), (H), (J) and Section 1123(b)(1). Those sections of Chapter 11 are included under Chapter 9 by specific reference at Section 901 of the Code.

The power of the debtor to make such modifications is subject, however, to Sections 903 and 904. Those sections reserve the power to control municipalities to the state and limit the jurisdiction and powers of the court. Section 903 specifically states that the Chapter does not limit or impair the power of a state to control, by legislation or otherwise, a municipality in the exercise of the political or governmental powers of such municipality. Section 904 provides that the court may not, without consent of the debtor, interfere with the political or governmental powers of the debtor, any property or revenues of the debtor or the debtor's use or enjoyment of any income-producing property.

In another sanitary improvement district Chapter 9 case, *Sanitary Improvement District 65 v. First National Bank of Aurora*, 73 B.R. 205 (Bkrtcy.D.Neb.1986), aff'd, 79 B.R. 877 (D.Neb.1987), it was determined that under Chapter 9 of the Bankruptcy Code, claims held by bondholders and claims held by warrantholders of sanitary improvement districts could be placed in different classes for treatment under a plan of adjustment. That case has been appealed to the Eighth Circuit Court of Appeals which then certified to the Nebraska Supreme Court the following question: "Whether the Nebraska Statutes governing sanitary and improvement districts,

Neb.Rev.Stat. §§ 31–701 et seq. (Reissue 1984), grant a priority of payment in favor of bonds over warrants so as to require that bonds be fully paid prior to utilizing revenues for payment of warrants?" The Nebraska Supreme Court in a decision published under the title *Hollstein v. First National Bank of Aurora*, 231 Neb. 711, 437 N.W.2d 512 (1989) answered the question in the affirmative. That opinion has not yet been relied upon by the Eighth Circuit Court of Appeals to finally determine the issue in the Bankruptcy Court with regard to SID 65. However, the State Supreme Court decision includes a detailed analysis of the statutory authority of sanitary improvement districts with regard to the payment of bonds and warrants. The court concluded at page 718 of the Nebraska Reports, 437 N.W.2d 512, "Our answer to the certified question is that the statutes of the State of Nebraska do grant a priority in favor of bonds over warrants so as to require that bonds be fully paid according to their terms prior to utilizing revenues for payments of warrants."

During argument in this case both the objecting party and the parties supporting confirmation have cited and have attempted to interpret the real meaning of the Nebraska Supreme Court decision. Since the actual issue before the federal courts and certified to the state court concern a classification matter, the supporters of confirmation say that the language from the opinion quoted above does not bind this Court and that this Court can confirm a plan which does not assure the bondholders of full payment while at the same time does provide that the warrantholders will receive some payment from the revenues of the governmental entity.

The objecting party, on the other hand, takes the position that the Nebraska Supreme Court has spoken and that this Court is bound by the determination of Nebraska law stated in the opinion. On that basis, the objector states that no plan can be confirmed unless the bondholders receive the face amount of their claim, including prepetition and post-petition interest at market rate. The bondholders also claim that there can be no discount by

virtue of an early redemption of their bonds, particularly if warrantholders will receive funds through such early redemption and bondholder discounting process.

■ This Court concludes, concerning the legal issues, that a debtor filing a petition under Chapter 9 of the Bankruptcy Code may obtain confirmation of a plan which assures bondholders of full payment of bonds issued pursuant to the plan, but may not be confirmed if the bonds proposed to be issued pursuant to the plan will, under circumstances contemplated by the plan, not be paid in full. The Court further concludes that the Bankruptcy Code adopted pursuant to the United States Constitution Article 1, Section 8 permits the federal courts through confirmation of a Chapter 9 plan to impair contract rights of bondholders and that such impairment is not a violation by the state or the municipality of Article 1, Section 10 of the United States Constitution which prohibits a state from impairing such contract rights.

The Court concludes that a debtor's plan similar to the one before this Court, but for the discount to the bondholders, is not a remittance or commutation of taxes prohibited by Article VIII, Section 4 of the Nebraska Constitution. That section of the Nebraska Constitution prohibits taxes which have been levied, assessed and/or have become a lien and are due from particular taxpayers from being reduced by action of the state government. However, this plan does not suggest a reduction of previously levied taxes.

■ The Court concludes that the debtor may obtain confirmation of a plan, over objection, which fails to provide a market rate of interest on bonds. The reason for this is that the Bankruptcy Code permits modification of claim holders rights. Bondholders and warrantholders are holders of unsecured claims in bankruptcy. Outside of bankruptcy, bondholders may have certain rights concerning the use of the taxing power of the state of Nebraska or the municipal enterprise, but bondholders have no "lien" on any assets of a mu-

nicipality. Bondholders, therefore, under the Bankruptcy Code, have unsecured claims. This is in contrast to a type of claim which is recognized both by state law and by the Bankruptcy Code as a secured claim. For example, Chapter 9 of the Bankruptcy Code was recently amended as was Section 552 of the Bankruptcy Code to assure that the lien on a stream of payments from the governmental entity to revenue bondholders was not cut off by the filing of bankruptcy under Section 552 of the Bankruptcy Code. Under Chapter 11 of the Bankruptcy Code, holders of unsecured claims must receive the present value of those claims in order for the plan to be confirmed. That provision is contained at Section 1129(a)(7). Section 1129(a)(7) is not included under Chapter 9.

Section 1129(a)(7) is the "best interest" provision of the confirmation standards under Chapter 11. Instead of that "present value" language, Section 943(b)(7) as amended in 1988 simply requires the Court to make a determination of whether or not the plan as proposed is better than the alternatives. Such a requirement does not mandate current market interest for an unsecured claim.

■ The Court concludes that the debtor may obtain confirmation of a plan, over objection, which does not utilize all of the assets of the estate to retire its obligations. The objecting party suggests that since the value of the property of the estate is equal to or exceeds the amount of the bondholder claims, it is the duty of the SID to levy sufficient taxes to pay the claims as they existed on the date of the petition plus accruing interest. This Court concludes that such an assertion is erroneous. If a municipality were required to pay prepetition bondholders the full amount of their claim with interest as contained on the face of the bonds and the SID had no ability to impair the bondholder claims over objection, the whole purpose and structure of Chapter 9 would be of little value. State law already requires full payment of the bonds issued prepetition and the state and the municipality are forbidden the opportunity to compromise the amounts due, without 100 percent consent of the bondholders. To create a federal statute based upon the theory that federal intervention was necessary to permit adjustment of a municipality's debts and then to prohibit the municipality from adjusting such debts is not, in the point of view of this Court, a logical or necessary result.

■ The Court concludes that a plan may be confirmed, over objection, if it does not provide for post-petition interest even if there is an asset base sufficient to provide such interest. The reason for this is that the bondholder claims are unsecured and have no right in bankruptcy law to post-petition interest.

■ The Court concludes as a matter of law that a plan may not be confirmed that requires the holder of bonds issued under such plan to surrender such bonds in a redemption procedure which does not give the bondholder the present value of its newly issued claim.

■ This plan meets all of the confirmation requirements contained in Section 943(b) except Section 943(b)(4) and (7) as amended in 1988. Since state law requires full payment to bondholders, and since a plan cannot be confirmed if it permits a debtor to do something that is prohibited by state law, it cannot be confirmed. The Bankruptcy Code permits modification of bondholder rights. The Bankruptcy Code permits an issuance of new bonds with different face amounts and different interest rates and different payment periods than the original bonds held by bondholders prior to the bankruptcy filing. However, those "new bonds" simply become a substitute for the original obligation and they must be issued in conformance with state law and the terms of their redemption and payment must be in conformance with state law. The Nebraska Supreme Court has spoken concerning the requirement of payment to bondholders. The *Hollstein* case cited above as decided by the Nebraska Supreme Court says that bondholders must be paid in full. This Court interprets that language to mean that the bondholders must be assured by the terms of the plan that they will receive full payment of

bonds issued under the plan. Without such assurance in the plan, no warrantholder claims may receive any payment.

This plan proposes to pay the holders of newly issued bonds five percent interest over several years with a level payment of interest and principal to retire the bonds. The plan proposes to levy sufficient taxes to obtain the revenues to pay such bonds at a five percent interest rate. With such levy, there will be additional funds available on an annual basis to make some payment to warrantholders. This Court concludes that such payment to warrantholders under Chapter 9 is not prohibited as long as full payment to bondholders of principal and interest on the newly issued instruments is assured.

However, this plan additionally proposes that during the first six months following confirmation, the bonds can be redeemed at a value which is approximately ten percent less than their actual present value using a capitalization rate of 8.75%. In addition, the plan proposes that during that same six-month period warrantholders may be paid a payment of cash in redemption of the warrants which is also ten percent less than the present value of the stream of payments being made to warrantholders under the terms of the plan.

This bondholder discount is prohibited by state law and is prohibited by Section 943(b)(4) of the Bankruptcy Code.

The evidence before this Court presented by the debtor and its two expert witnesses is that this plan is feasible with regard to the issuance of the bonds and the other debt instruments. It is feasible with regard to the payoff over time of the bonds and the partial payment of the warrants. The debtor is able to raise sufficient revenues on an annual basis to fund full payment of the face amount of the newly issued bonds plus five percent interest plus some payment to warrantholders on an annual basis. It, therefore, meets the feasibility test of Section 943(b)(7) of the Code as amended in 1988.

It must be emphasized by this Court that the plan is feasible without annexation by the City of Lincoln or any other governmental entity. Therefore, but for the discount provided during the first six months to the bondholders of the newly issued bonds, this plan would have been confirmed.

The evidence before the Court is that a plan that does not provide for some type of lump-sum payment to the warrantholders during the first six months if warrants and bonds are redeemed, will not be approved by the warrantholder class. However, there is no requirement that the warrantholder class approve such plan because of the "cramdown" opportunities under the Code.

State law requires that bondholders get paid even if warrantholders do not. No plan can be confirmed that provides for the holders of bonds issued under the plan to receive less than their full payment while warrantholders receive some payments.

Because it appears to this court that there is a possibility that a plan can be confirmed over the objection of warrantholders and with cramdown provisions invoked, the Court will not dismiss this case as it could do under Section 930(b). Instead, it will grant the opportunity to the debtor to file a modification of this plan or to file a new plan under Section 930(a)(5) of the Code as amended in 1988.

There is a motion pending before this Court for relief from the automatic stay to permit the moving party to proceed in state court to obtain the appointment of an administrator which would take over the governmental affairs of this entity and propose a plan which is confirmable. That motion is denied because this debtor is capable of proposing a plan which is confirmable and has attempted in good faith to do so.

This court needs to address the specific objection under the "best interest" test of Section 943(b)(7). The alternative to confirmation of a plan similar to the one before the Court is dismissal of the case. That would permit the parties to go back to state court and permit the state judge to order the debtor to levy sufficient taxes to pay all prepetition bonds plus accrued interest in full. There is evidence before this

Court which this court finds convincing that such a procedure would create such a high level of taxes for the district and the homeowners of the district that it is likely the revenues would not be made available to the district by taxpayers and the bondholders would still not be paid. This Court sees no benefit in permitting this matter to go back through the state court system which has no power to permit compromise of the debt structure without consent of all parties.

In conclusion, the plan is denied confirmation. Debtor is granted leave to file a new or modified plan.

Separate journal entry shall be filed.