REQUESTED BY: Senator Edward J. Schrock Nebraska State Legislature
Neb. Rev. Stat. § 48-115 (Cum. Supp. 1996) specifies, in some detail, what the terms "employee" and "worker" should be construed to include for purposes of the Nebraska Workers' Compensation Act. LB 100 would add a new subsection 5 to §48-115 in order to have that statute read, in pertinent part:
 The terms employee and worker are used interchangeably and have the same meaning throughout the Nebraska Workers' Compensation Act. Such terms include the plural and all ages and both sexes and shall be construed to mean:
* * * *
 (5) Every person who delivers or distributes newspapers for the owner or operator of a newspaper business or the owner or owners of a business hired to deliver or distribute newspapers shall be an employee of such business under the Nebraska Workers' Compensation Act.
(emphasis added). You state that you have "several grave concerns about LB 100," and therefore you have posed two questions to us concerning its constitutionality.
Your first question involves a concern that the language of LB 100 emphasized above is "extremely vague and ambiguous." You point out that "every person" could include a newspaper carrier along with a host of other persons such as parents, spouses, etc., who might be involved at some time and in some way in the delivery process. You also point out that "every person" could include people who are in the delivery business who are hired to transport or distribute newspapers together with other products such as auto parts or beauty supplies. Your concern extends further to the terms "such business," "operator of a newspaper business," and "owners of a newspaper business hired to deliver or distribute newspapers" which you also believe are extremely ambiguous and unclear. In light of these concerns, you ask:
 . . . should LB100 be deemed void for vagueness based on the due process guarantees of the U.S. Constitution and Article I, section 3, of our Nebraska Constitution? Persons of ordinary intelligence should not have to guess at its meaning especially when violations of Nebraska's workers' compensation laws can have criminal ramifications (see, e.g. Neb. Rev. Stat. Sec. 48-144.04).
With respect to state legislation such as the language at issue in LB 100, the void for vagueness doctrine is based on the due process requirements contained in the Fourteenth Amendment to the United States Constitution and in Article I, section 3, of the Nebraska Constitution. U.S. v. Articles of Drug, 825 F.2d 1238
(8th Cir. 1987). In order to pass constitutional muster, a statute must be sufficiently specific so that persons of ordinary intelligence do not have to guess at its meaning, and the statute must contain ascertainable standards by which it may be applied.Articles of Drug, 825 F.2d at 1243. The void for vagueness doctrine applies to both criminal and civil statutes. Id. at 1244. However, greater vagueness is tolerated in civil statutes than in criminal statutes. Id.
In regards to Nebraska's workers' compensation laws, a violation of those laws could result in criminal ramifications pursuant to Neb. Rev. Stat. § 48-144.04 (1993) and Neb. Rev. Stat. § 48-145.01 (1993). However, an employer is not directly subject to criminal sanctions for any violation of the workers' compensation laws, but only indirectly subject to them for violating an order of the Nebraska Workers' Compensation Court. For example, § 48-144.04 states, in relevant part, that "[a]ny employer . . . who fails, neglects, or refuses to file any report required of him or her by the Nebraska Workers' Compensation Court shall be guilty of a Class II misdemeanor for each such failure, neglect, or refusal. . . ." Similarly, §48-145.01 states in relevant part that "[a]ny employer required [by the Nebraska Workers' Compensation Court] to secure the payment of compensation under the Nebraska Workers' Compensation Act who willfully fails to secure the payment of such compensation shall be guilty of a Class I misdemeanor. . . ." Therefore, it is likely that greater vagueness would be tolerated with respect to LB 100 since, for all intents and purposes, Nebraska's workers' compensation laws, including the definitional change proposed LB 100, involve civil rather than criminal statutes.
The Nebraska Supreme Court has indicated that a civil statute which is otherwise valid will not be held void for vagueness unless it is so deficient in its terms as to render it impossible to enforce. Neeman v. Nebraska Natural Resources Comm'n,191 Neb. 672, 217 N.W.2d 166 (1974). In State ex rel. Douglas v.Herrington, 206 Neb. 516, 294 N.W.2d 330 (1980), the court said that the established test for vagueness in a statute is whether it either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. Id. at 521,294 N.W.2d at 333.
In applying that due process test to LB 100, it first must be determined, based upon your various concerns, whether "every person" in the context of that bill is a phrase of ordinary understanding such that persons of common intelligence would not have to guess at its meaning in terms of complying with the prohibitions in the bill. There are several reasons why we believe that it is.
Considering "every person" in the context of LB 100, it appears to us that persons of common intelligence would not have to guess at its meaning or differ as to its application. It is true that the phrase "every person" could include not only the newspaper carrier, but also the carrier's husband, children, siblings or others. However, under the language of LB 100, in order to be subject to the workers' compensation laws, "every person" must be delivering newspapers "for the owner or operators of a newspaper business or the owner or owners of a business hired to deliver or distribute newspapers." (Emphasis added.) Thus, only the carrier would be the person who is responsible for delivering the newspapers for the owner. A spouse, child or sibling of the carrier would be delivering the newspapers for the carrier, not for the owner. Accordingly, persons of common intelligence would not have to guess at the meaning of the phrase "every person," read in context with the whole of LB 100, since most people would assume that its scope covers only those hired by the business to deliver its newspapers.[1]
In addition, according to the clear language of LB 100, if a carrier delivers more than one newspaper, the carrier would be deemed an employee of every business in which he has a contract of employment to deliver its papers. For example, if the carrier delivers newspapers for the Omaha World-Herald and the WallStreet Journal, then the carrier would be an employee of both papers. Indeed, the clear and unambiguous language of LB 100 dictates that both the Omaha World-Herald and the Wall StreetJournal would be deemed employers of the carrier and both would be subject to the workers' compensation laws. Similarly, the phrase "every person" could include people who are in the delivery business who are hired to distribute newspapers to various drop points, but who typically haul other products such as auto parts and beauty supplies. Once again, the language of LB 100 would make these people employees of the newspaper business. Thus, we believe that the phrase "every person" in LB 100 is not unconstitutionally vague. When the phrase is read in conjunction with the whole of the bill, persons of ordinary intelligence would not have to guess at its meaning.
In applying the due process test to the other language of LB 100 which causes you concern, we must determine whether the phrases "such business," "operator of a newspaper business," and "owners of a business hired to deliver or distribute newspapers" are phrases of ordinary understanding such that persons of common intelligence would not have to guess at their meaning in terms of complying with the prohibitions in the bill. LB 100 states that any operator of a newspaper business or an owner of a business who hires an individual to deliver newspapers should be deemed an employer of that individual and subject to the workers' compensation laws. We believe that persons of ordinary intelligence would assume that LB 100 applies to either a specific operator of a newspaper business who hires individuals to deliver newspapers or to an owner of a non-newspaper business that hires individuals to deliver newspapers. In other words, either the carrier will be delivering newspapers for the newspaper business itself or the carrier will be delivering newspapers for a non-newspaper business that hires individuals to deliver newspapers. Again, we do not believe that this language is unconstitutionally vague.
As a result, it appears to us that LB 100 generally uses ordinary terms which find adequate interpretation in common usage and understanding. On that basis, we do not believe that LB 100 is sufficiently vague so as to violate due process. Nevertheless, if you continue to believe that LB 100 is confusing and unclear, you may wish to introduce further amendatory language to deal with the interpretation problems which you perceive.
Your second question involves art. III, § 18 of the Nebraska Constitution. You state that the Nebraska Workers Compensation Act currently applies to every employer in the state of Nebraska except for certain enumerated nonhazardous occupations, and that LB 100 seems premised on an assumption that all newspaper carriers and distributors are currently being treated as independent contractors who require special legislation separate and apart from all other independent contractors. You then note two potential problems with the bill from that prospective. First, some newspapers apparently already hire their carriers as employees, and LB 100 would be duplicative of those efforts. Second, "bestowing special protection to a limited group of people who are otherwise part of a larger group of independent contractors appears to be a creation of an unreasonable class and unconstitutional. LB 100 seems to be trying to differentiate between independent contractors with no rational basis for the distinction." Based upon these concerns, you ask ". . . whether LB100 constitutes `class legislation' that is in contravention of Article III, Section 18 of the Nebraska Constitution?"
Art. III, § 18 of the Nebraska Constitution provides, as is pertinent:
 The Legislature shall not pass local or special laws in any of the following cases, that is to say:
* * * *
 Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever. . . . In all other cases where a general law can be made applicable, no special law shall be enacted.
A legislative bill can violate art. III, § 18 by (1) creating a totally arbitrary and unreasonable method of classification, or (2) by creating a permanently closed class. MAPCO v. State Boardof Equalization, 238 Neb. 565, 471 N.W.2d 734 (1991); Haman v.Marsh, 237 Neb. 699, 467 N.W.2d 836 (1991). As a result, LB 100 must be measured under those criteria.
At the outset, we are not entirely sure that the language at issue from LB 100 even creates a classification. You state that the bill attempts to treat one group of independent contractors (newspaper carriers) differently than all other independent contractors, and therefore, separately classifies them. However, it is not completely clear that most newspaper carriers are independent contractors under the current statutes. In Larson v.Hometown Communications, Inc., 248 Neb. 942, 540 N.W.2d 339
(1995), the Nebraska Supreme Court determined that a young girl who was injured while delivering newspapers was an employee of the paper involved under the facts of that case and the current Workers' Compensation statutes. Obviously, the decision inLarson that the carrier was an employee rather than an independent contractor was based upon the factual situation in that specific case. However, we suspect that the circumstances surrounding the employment of the plaintiff in the Larson case are not very different from the employment situation with respect to many other newspaper carriers across the state. Therefore, it could be argued that the bill does not treat one group of independent contractors differently from all others.
Assuming, however, that a classification is involved in LB 100, under the initial test described above, that classification cannot be totally arbitrary and unreasonable. In that regard, the Nebraska Supreme Court has indicated that legislative "[c]lassifications must be based on some substantial difference of situation or circumstances that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified." Haman v. Marsh supra at 713,467 N.W.2d at 847 (emphasis in original). "The test for statutes challenged under the special-laws prohibitions . . . is that they must bear `a reasonable and substantial relation to the objects sought to be accomplished by the legislation.'" Id.
We cannot say, as a matter of law, that there is no substantial difference of situation or circumstances that would naturally suggest the justice or expediency of diverse legislation with respect to newspaper carriers versus other independent contractors, or that any such classification does not bear a reasonable and substantial relation to the objects sought to be accomplished. For one thing, it is apparent that many newspaper carriers are minors. Therefore, it could be argued that children carrying newspapers should, as a matter of justice or expediency, be treated differently from other independent contractors who are operating businesses as adults, and that such separate treatment bears a substantial relation to the object of protecting those minors. As the trial judge stated in theLarson case, "[i]t is beyond sophistry and closer to outright dishonesty to characterize a 10-year[-]old party to a contract as a `little merchant' and thus an independent contractor." Larson
at 959, 540 N.W.2d at 351. As a result, since there may well be differences of circumstances which suggest the necessity for different treatment of newspaper carriers under statute, we do not believe that any classifications inherent in LB 100 are clearly arbitrary or unreasonable.
Art. III, § 18 is also violated by legislation which creates a permanently closed class. With regard to a closed class in this context, "a classification which limits the application of the law to a present condition, and leaves no room for opportunity for an increase in the numbers of the class by future growth or development, is special." Haman v. Marsh, supra at 716, 467 N.W.2d at 848. In the present instance, the provisions at issue in LB 100 would apply to existing newspaper carriers and also to those individuals who become newspaper carriers in the future. Consequently, LB 100 does not involve a closed class, since it allows for an increase in the numbers of the class. It, therefore, does not violate art. III, § 18 on that basis.See also Op. Att'y Gen. No. 92129 (December 30, 1992) (statutory classification which allowed additional members in the future was not a closed class under art. III, § 18).
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
cc. Patrick J. O'Donnell Clerk of the Legislature
Approved by:
Don Stenberg
Attorney General
[1] Larson v. Hometown Communications, Inc. 248 Neb. 942,540 N.W.2d 339 (1995) supports this conclusion. The issue in that case was whether a young girl who carried newspapers for the Fremont Tribune as a substitute for another girl was an independent contractor or an employee of the paper for purposes of the Workers' Compensation statutes. The Court specifically considered whether the substitute had any contractual or employment relation with the paper, and indicated that a person working as a substitute for another may be an employee under the Workers' Compensation law when the employer knows of, and acquiesces in, the substitution. This necessarily implies that persons subject to the Workers' Compensation Act must be hired by the employer.